## FREDERICK BIRDSALL, Appellant, *v.* B. H. CARRICK, Respondent.

Without the express approval of the Governor, an Act of the Legislature can only become a law in two cases. First: when it is passed over his objections by a two-thirds vote of each House. Second: when he fails to return a bill with his objections within the time prescribed by the Constitution.

When the Governor in due time sends back a bill which has been submitted to him, stating that he cannot act on it because of some supposed informality in its passage, this is in effect an objection to the bill, and it can only become a law by further action of the Legislative branch, although the Governor may have been mistaken as to the supposed defect in the bill.

In this case, there was a petition to this Court for a mandamus to compel the Treasurer of Lyon County to pay certain warrants out of the General Fund of that county. The Treasurer admitted there were funds in the Treasury applicable to these warrants, unless the same had been diverted by what was claimed to have been a law passed at the session of the Legislature begun on the first Monday of January, 1867. The petitioner contended that the pretended law was never regularly passed, and if so passed was unconstitutional. There were a number of objections raised to the validity of the law, and a large number of sections of the Constitution discussed by the respective counsel. But, as only one point was passed on by the Court, it is not deemed necessary to go into a statement of facts not connected with the point on which the decision was made. The only point decided by the Court was as to the effect of the Governor's Message accompanying the bill when it was sent back to the Secretary of State.

The facts in relation to that point, are fully stated in the opinion.

*Waldo & Wells*, for Petitioner.

*Wm. M. Gates*, for Respondent.

Opinion by Lewis, J., Beatty, C. J., concurring.

The petitioner's application is for a writ of mandamus to compel the Treasurer of Lyon County to pay a certain warrant or evidence of indebtedness issued by the county and made payable out of its

Birdsall *v.* Carrick.

General Fund.    The Treasurer refuses to pay the warrant because
it is claimed that this, with all other claims against the General
Fund of that county, is to be funded in accordance with the pro-
visions of an Act of the Legislature of the present year, entitled
" An  Act  authorizing  the County of Lyon to Fund the Outstand-
ing Indebtedness against the General Fund of said County ;  to pay
the Interest thereon, and for the Gradual Liquidation of the same."
    The first section of this Act discloses that :
    " For  the  purpose  of  placing the finances of Lyon County on a
permanent cash basis, and to enable the county to pay its indebted-
ness, the  Board  of County Commissioners, Treasurer and Auditor
of said county are hereby appointed a Board, and  authorized to
fund all outstanding indebtedness against the General Fund of said
county of Lyon, which accrued on or before the first Monday in
May, A.D. 1867, by issuing bonds in payment thereof, payable at
the office of the County Treasurer, in the following manner, to
wit : one-fourth of the whole amount on the first day of January,
A.D. 1869 ; one-fourth of the whole amount on the first day of
January, A.D. 1870 ; one-fourth of the whole amount on the first
day of January, A.D. 1871, and one-fourth of the whole amount on the
first day of January, A.D. 1872.    Said bonds shall bear interest at
the rate of ten per cent. per annum from the first day of July, A.D.
1867, and said interest shall be payable semi-annually, on the first
day of January and July of each year."
    It is conceded that except for the provisions of this Act, the
warrant held by the petitioner could be paid, there being a suffi-
cient amount of money in the General Fund for that purpose.  This
Act is the only showing made by the Treasurer why a peremptory
writ should not issue compelling him to pay the warrant.   In reply
to that showing, the petitioner claims that the Act in question never
became a law ; that there is no lawful authority for funding the
indebtedness of the county, and refusing to pay his warrant whilst
there is sufficient money in the proper fund wherewith to do it.
Our inquiries are thus confined to the question whether the Fund-
ing Act referred to, and which Carrick claims is a sufficient show-
ing why the writ should not issue against him, is now or ever was
a valid law.   We fully agree with counsel for Birdsall that it

never possessed the virtue or authority of law. Without the express approval of the Executive, there are but two ways by which an Act of the Legislature can become a law: 1st. By receiving a two-thirds vote of both houses of the Legislature after it has been vetoed and returned by the Governor. 2d. By a failure on the part of the Governor to return it to the house where it originated within five days after its reception by him whilst the Legislature is in session, or within ten days after the adjournment of that body. In both of these cases, the Act becomes a law without the signature or approval of the Executive. (Vide Constitution, Art. 4, Sec. 35.) These are the only cases, however, in which the approval of the Governor can be dispensed with. In all other cases, such approval is as essential to give it the sovereign authority of law as the passage by the Legislature itself.

In this case, the Legislature adjourned before the expiration of five days after the bill was presented to the Governor, and the time within which he was required to act upon it was thereby extended ten days further. Before the expiration of that time, it was returned to the office of the Secretary of State, as required by the Constitution, (Sec. 35, Art. 4) with a message giving reasons why it was not approved. It appears from that message, that some days after the adjournment of the Legislature it was discovered that the Secretary of the Senate had neglected to sign the enrolled bill, an omission which, in the opinion of the Governor, was so fatal that his approval would not cure it, or give the Act the authority of law. After mentioning that fact, he concludes his communication in the following words: " Believing this omission would be fatal to the bill, even if approved, I cannot act upon it."

Here is clearly a reason given for not approving the bill—a succintly stated objection to it which appeared to the Governor so material that his approval would do no good: hence he refused to do what seemed but an idle and useless act.

It is not within the province of this Court to determine whether the objections interposed by the Executive possessed any substantial merit or not. The Legislature is the only tribunal which has the authority to pass upon that question. It is only for this Court to determine whether the bill in question became a law or not—that is

in this case whether it was approved or not; and if not, whether it became a law by a failure to return it within the time prescribed by the Constitution. It is admitted that it was returned to the office of the Secretary of State before the expiration of the lawful time. That it never passed the Legislature by a two-thirds vote after it was so returned, is also conceded. And that objections are urged to it and a reason given for not approving it, cannot, it seems to us, be very seriously questioned. It is perfectly clear that the Governor did not intend to give the bill his approval, or he would have signified it by his signature. That he did not intend it to become a law by lapse of time is evident from the fact that he returned it within the period prescribed by law.

Had the legislative body been in session when the omission of the Secretary's signature was discovered, it could have been supplied upon the suggestion of the Governor; and after the adjournment of that body, it was probably no reason why it should not have been approved; but as it was not, the refusal to do so must be followed out to all its legitimate consequences.

We are, therefore, satisfied that the Act never became a law, and that it constitutes no authority to the Treasurer to refuse the payment of the warrant.

Hence a peremptory writ of mandamus must issue, in accordance with the petition.